UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAR 3 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RICHARD WHALEN,           )
                          )
            Plaintiff,    )
                          )   Civil Action No.02-1454 (RJL)
        v.                )
                          )
U.S. MARINE CORPS, *et al.*, )
                          )
            Defendant.    )

## MEMORANDUM OPINION
(March 31, 2005) [#43, #59]

The plaintiff, Richard Whalen brought this action on July 23, 2002 challenging 38 redactions by the Department of Navy and other agencies in a 1025 page study of the Bay of Pigs operation which had been produced to the plaintiff under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522.

This matter is presently before the Court on defendants' motion for summary judgment ("Def. Mot.") and plaintiff's cross motion for summary judgment ("Pl. Cross-Mot."). Having considered the defendant's motion, the plaintiff's cross-motion, the oppositions and replies thereto, all accompanying exhibits, and the entire record herein, the Court GRANTS defendants' motion for summary judgment and DENIES the plaintiff's cross-motion for summary judgment.

1



## ANALYSIS

### A. STANDARD OF REVIEW

The Court will grant summary judgment to the defendant agency in a FOIA case if it can demonstrate that there exists no genuine issue of material fact with regard to the agency's compliance with FOIA. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). In evaluating such action, the Court will view the facts in a light most favorable to the Plaintiff. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

FOIA requires that every Federal agency make available any records so long as the request "reasonably describes such records." 5 U.S.C. § 552 (a)(3). Although the Act "reflects a general philosophy of full agency disclosure", *Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (internal quotations omitted), it provides for several exemptions "under which an agency may deny disclosure of the requested records." 5 U.S.C. § 552 (b); *See Assassination Archives Research Center v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).

In arguing that information is properly withheld under an exemption to FOIA, the agency must describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984); *Wheeler v. CIA*,

2

271 F. Supp. 2d 132, 136 (D.D.C. 2003).

The defendant asserts that some of the information withheld by the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency ("DIA") and the Joint Chiefs of Staff ("JCS") falls under Exemption 1 and Exemption 3 to FOIA. Although the Court must review the government's determination of the applicability of Exemption 1 and 3 *de novo*, 5 U.S.C. § 552 (a)(4)(B), the Court is to accord "substantial weight" to the government's determinations concerning the details of the classified status of the disputed record. *Salisbury v. U.S.*, 690 F.2d 966, 970 (D.C. Cir. 1982); *Halperin v. CIA*, 629 F.2d 144, 147-148 (D.C. Cir. 1980).

**B.     EXEMPTION 1**

Exemption 1 to FOIA protects disclosure of certain information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The applicable Executive Order provides that classification under Exemption 1 may be made only if (1) an 'original classification authority' is classifying the information, (2) the information is owned by, produced by or for, or is under the control of the United States Government, (3) the information falls within one or more of the categories of information listed in section 1.5 of this order[1], and (4) the 'original classification authority' determines that the

---

[1] Section 1.5 provides for the exclusion from disclosure of information covering military plans, weapons systems, or operations; foreign government information; intelligence activities (including special activities), intelligence sources or methods, or cryptology; foreign relations or

unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the original classification authority is able to identify and describe the damage." Exec. Order 12,958, § 1.1, 60 Fed. Reg. 19,825 (Apr. 17, 1995).[2]

Under the procedural requirements of Executive Order 12,958 (elements one and two above), the 'original classification authority' must be the same agency classifying the information, and the information must be owned by, produced by or for, or is under the control of the United States Government. Neither of these requirements has been challenged by the plaintiff. (*See* Pl. Cross-Mot.)[3]

Under the substantive requirements of Executive Order 12,958 (elements three and four above), the government must establish that the withheld information falls properly within the definitions of section 1.5 of that order, and that the original classification authority has determined that the unauthorized disclosure of the information reasonably

---

foreign activities of the United States, including confidential sources; scientific, technological, or economic matters relating to the national security; United States Government programs for safeguarding nuclear materials or facilities; or vulnerabilities or capabilities of systems, installations, projects or plans relating to the national security.

[2] The defendant cites to Executive Order 13,292 in its pleadings. The Court notes that the applicable Executive Order is that which existed when the final classification action, on the record, is taken. *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 29 (D.C. Cir. 1998). Executive Order 13,292 became effective March 25, 2003, a date after which the final classification actions were taken. Although the government is correct that the differences between the two Executive Orders, for purposes of this motion, are of no moment, nevertheless for accuracy the Court cites only to Executive Order 12958, the effective order for the case at hand.

[3] As no opposition has been levied by the plaintiff on these criteria, any challenges as to the procedural elements are waived.

could be expected to result in damage to the national security and the original classification authority is able to identify and describe the damage. Exec. Order No. 12,958. The government has provided signed declarations indicating both that the information withheld falls within specific categories listed in section 1.5 and that disclosure could be expected to result in damage to the national security. (Def. Mot. at 7.) For example, the Dorn Declaration states with specificity each redaction made by the CIA and the reasons therefore. (Dorn Decl. ¶ 12 at 7-8, ¶ 34 at 22-28.) Additionally, the Schwartz Declaration states with reasonable specificity the information withheld (e.g. "actual war plans that remain in effect"). (Schwartz Decl. ¶ 3, Ex. 1 at 3; *see also* Richardson Decl. ¶¶ 7-10, Ex. 1.)

    The plaintiff argues that "the massive disclosure of information pertaining to Cuban operations, including the disclosure of human intelligence sources, intelligence sources and methods, code names, and the like severely undercuts" the government's assertions, through the Dorn Declaration, that the information could be expected to cause damage to the national security. (Pl. Cross-Mot. at 13.) The plaintiff continues, "[a]ll that a hostile foreign power needs to know in order to decipher American Cuban operations during the 1960s already has been disclosed." (Id. at 18.) The plaintiff cites no legal authority, however, in support of its position. Indeed, it seems equally as likely that the government's prior voluminous disclosures indicate diligent respect by the coordinate agencies to Executive Order 12,958 and bolster the defendant's position that it has withheld only that information which it must under the applicable exemptions.

5

Regardless, plaintiff's speculation aside, the Court finds no reason to "second-guess such agency opinions in the typical national security FOIA case." *Halperin*, 629 F.2d at 148 (D.C. Cir. 1980).

Having previously found that the declarations provided by the government are reasonably specific and in the absence of any evidence of bad faith, *see id.*, the Court finds that the defendant has met its burden of adequately justifying the classification decision to withhold information under Exemption 1 and Executive Order 12,958.

## C.   EXEMPTION 3

The defendant claims that Exemption 3 precludes disclosure of certain information contained on 33 pages of the Report. (*See* Def. Mot. at 9.) Exemption 3 protects from disclosure under FOIA, *inter alia*, information specifically exempted from disclosure by a statute that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). If a qualifying disclosure-prohibiting statute exists, and if the logical inclusion of the withheld information falls within the scope and coverage of that statute, the information is properly exempt from disclosure pursuant to Exemption 3 to FOIA. *CIA v. Sims*, 471 U.S. 159, 167 (1985).

To qualify under Exemption 3, a statute must, "on its face, exempt matters from disclosure." *Reporters Comm. for Freedom of the Press v. United States Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).

The agency relies on two specific statutory provisions in support of its assertion of

Exemption 3 to FOIA. First, the CIA relies on § 103(c)(7) of the National Security Act of 1947, codified as amended at 50 U.S.C. § 403-3(c)(7) (2003). That provision states that the Director of Central Intelligence, "shall protect intelligence sources and methods from unauthorized disclosure." This provision qualifies as a disclosure-prohibiting statute under Exemption 3. *Sims*, 471 U.S. at 167; *accord Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993). Second, the CIA relies on section 6 of the Central Intelligence Agency Act of 1947, codified as amended at 50 U.S.C. § 403g, which provides that the CIA is exempt from the provision of any other law requiring the disclosure and/or publication of the organization, function, names, official titles, salaries, or numbers of personnel employed by the CIA. 50 U.S.C. § 403g has been found to constitute a qualifying disclosure prohibiting statute. *Sims*, 471 U.S. at 193 (Marshall, J., concurring) (identifying § 403g as an exemption from FOIA); *see Miner v. CIA*, 88 F.3d 796, 801 (9th Cir 1996); *see Weiner v. FBI*, 943 F.2d 972 (9th Cir. 1991).

Because prior judicial determinations have upheld the CIA's reliance on each statutory provision, the only inquiry for this Court is whether the redacted records in question fall within each of those statutory provisions. They do.

The CIA specifically claims that information contained on 33 pages of the Report is exempt pursuant to Section 103(c)(7) of the National Security Act of 1947, which provides for the protection of "intelligence sources and methods from unauthorized

disclosure."[4]  50 U.S.C. § 403-3 (c)(7).[5]

The plaintiff's sole argument in opposition is that the information withheld has likely already been disclosed. (Pl. Cross-Mot. at 20, "any further disclosure would likely add little if anything to what already has been divulged.") Putting aside the waiver issue, which is discussed more fully herein, plaintiff's argument is simply not responsive in challenging the defendant's compliance with the requirements of Exemption 3 to FOIA. Accordingly, the Court finds that the defendant has adequately justified its position and met the legal requirements under FOIA Exemption 3.

**D.   WAIVER**

Although the Court finds that the government has met its burdens under Exemptions 1 and 3 to FOIA, the Court must determine whether the government has waived its FOIA exemptions. Not surprisingly, plaintiff argues that the CIA is required to produce the information being withheld because the information has previously been

---

[4]According to the Dorn Declaration, this information constitutes intelligence sources, foreign liaison information, intelligence methods, and cryptonyms. (*See* respectively Dorn Decl. ¶¶ 15-19, 20-22, 23-27, and 28-30.) In that regard, the Dorn Declaration specifically provides the definitions of each of these terms and describes, in reasonable detail, how the redacted information falls within these categories. In addition, the Dorn Declaration describes how the information sought relates to CIA organization information, which is explicitly exempt from disclosure by 50 U.S.C. § 403g. (*See* id.)

[5]Indeed, the Court recognizes that the "broad sweep" of § 403-3, "comports with the nature of the [CIA's] unique responsibilities." *Sims*, 471 U.S. at 169. Further, "the legislative history of [§ 403-3] also makes clear that Congress intended to give the [Director of Central Intelligence] broad authority to protect the secrecy and integrity of the intelligence process." *Id.* at 170. The "sources and methods" exemption is a "near-blanket FOIA exemption," and is "only a short step [from] exempting all CIA records from FOIA." *Miner v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996).

8

disclosed either directly by the CIA, or with CIA approval. (Pl. Cross-Mot. at 6.) In considering whether the government has waived its FOIA exemptions, the plaintiff has the burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993). For the following reasons, the plaintiff has failed to meet its burden.

The plaintiff notes three specific instances of public disclosure which they suggest constitute waivers to FOIA exemptions. The plaintiff argues that redacted information is likely the same information cited in a book titled *The Night Watch* by David Phillips. (Pl. Cross-Mot. at 6-7.) According to the plaintiff, the redacted portion of the Report, which reads, "radio station from [redacted]," is likely the same radio transmitter specifically identified by Phillips in *The Night Watch*. Next, the plaintiff alleges that information withheld in the Report pertaining to a CIA station chief in Guatemala was previously disclosed in the 1963 *Biographical Register*, an official publication of the United States Department of State. (Id. at 7.) Finally, the plaintiff argues that in referencing "[redacted] Saipan," the Report is referring to a United Nations Trust Territory which is no longer in use by the CIA and which has been explicitly discussed in a book titled *The CIA and the Cult of Intelligence* by Victor Marchette and John Marks. (Id.)

These specific instances do not suffice, as a matter of law, to constitute waivers. In all of these instances, the plaintiff is making an educated *guess* as to the information

9

discussed in the Report. The mere fact that a FOIA requestor is able to "piece together" information and guess at withheld information does not constitute a waiver. *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984); *See Barouche v. United States Dep't of Justice*, No. 90-2753, slip op. at 15-16 (D.D.C. July 5, 2001) (holding that simply because a plaintiff can identify withheld information from other source information does not diminish the agency's privacy interests). Furthermore, as the defendant notes in its opposition, the alleged disclosures cited by the plaintiff do not constitute "official disclosures" and as such cannot stand as the factual predicate for a finding of waiver by the governmental agency. *Schlesinger v. CIA*, 591 F. Supp. 60, 66 (D.D.C. 1984) (finding that both *Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) and *Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) establish that "CIA clearance of books and articles, books written by former CIA officials, and general discussions in Congressional publications do not constitute official disclosures").

Moreover, the plaintiff speculates that "the CIA has almost certainly withheld other information which already has been publicly released" because "the CIA made approximately 300,000 pages of its records available to the House Select Committee on Assassinations, which investigated President Kennedy's assassination." (Pl. Cross-Mot. at 8.) According to the plaintiff, "a high percentage of this volume of documents concerned Cuba, Cuban exiles, and Cuban exile organizations." (Id.) Even if correct in this speculation, the plaintiff has utterly failed to demonstrate that the withheld information is indeed duplicative of that which has previously been disclosed to the

Congressional Committee. *Afshar*, 702 F.2d at 1132. Stated simply, the volume of disclosure, alone, does not a waiver make.

Accordingly, the plaintiff has failed to meet its burden to establish that the CIA has waived its FOIA exemptions.

### E.  SEGREABILITY

Finally, if a record contains information that is exempt from disclosure, FOIA requires that all "reasonably segregable" information be disclosed after redaction or deletion of the exempt material. 5 U.S.C. § 552 (b). From the minimal and fragmented redactions made by the DIA and the JCS, it is clear that those agencies took care to segregate the information that could be disclosed from the information that fell under either Exemption 1 or 3 to FOIA. (Def. Mot. at 12.) Likewise, the Dorn Declaration makes it abundantly clear that the CIA's redactions were made only after a careful line by line review of the information and a determination as to whether any of the information was reasonably segregable and therefore, available for disclosure. (*See* Dorn Decl. ¶ 7.) Thus, the Court is satisfied that the DIA, JCS and CIA disclosed all reasonably segregable, nonexempt information.[6] *Trans-Pac. Policing Agreement v. United States*

---

[6]The plaintiff argues that the CIA failed to properly mark the classified material as required by Executive Order 12958. (Pl. Cross-Mot. at 10, 21.) The Court need not assess the factual accuracy of this contention because as a matter of law such an omission, without more, constitutes 'harmless error' and does not suffice in overcoming the FOIA exemptions. *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 485 (D.C. Cir. 1980).

In addition to the Report, plaintiff seeks "all correspondence exchanged between the Central [sic] Intelligence Agency and the Navy, including the Marine Corps., regarding any request for said Bay of Pigs Report, including but not limited to any correspondence pertaining to any review by [sic] your agency of said Bay of Pigs Report." (First Amended Complaint.) On

11

*Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is GRANTED and the plaintiff's cross-motion for summary judgement is DENIED. An appropriate order is filed contemporaneously herewith.

RICHARD J. LEON
United States District Judge

---

September 30, 2003, the Court granted defendant's motion to strike plaintiff's first amended complaint. [Dkt. # 66]. Additionally, on March 10, 2004, the Court denied the plaintiff's motion to compel a search of certain records. [Dkt. # 73]. As plaintiff's original complaint solely requested the Report, the plaintiff's arguments on this point are moot.